UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CEDRIC WILLIAMS,

                Plaintiff,

-against-                              8:15-CV-1534 (LEK/CFH)

COCA COLA CO.,

                Defendant.

## DECISION AND ORDER

**I. INTRODUCTION**

On December 28, 2015, pro se Plaintiff Cedric Williams commenced this action under 28 U.S.C. § 1332(a) against Defendant Coca Cola Co., alleging various state tort law causes of action arising from injuries he sustained after drinking Diet Coke. Dkt. No. 1 ("Complaint"). Presently before the Court is Coca-Cola's motion to dismiss. Dkt. Nos. 16 ("Motion"), 16-1 ("Memorandum"). Williams filed an opposition, Dkt. No. 20 ("Response"),[1] and Coca-Cola submitted a reply, Dkt. No. 23 ("Reply"). For the following reasons, Defendant's Motion to Dismiss is granted in part and denied in part.

**II. BACKGROUND**

Williams has been incarcerated at the Clinton Correctional Facility ("Clinton C.F.") since December 2010. Compl. ¶ 4. In April 2015, Williams received an unspecified number of cans of Diet Coke in a monthly food package at Clinton C.F. Id. ¶ 5. After consuming Diet Coke, Williams experienced migraine headaches and impaired vision, which he attributes to the

---

[1] Although Williams styles his submission as a motion to strike Coca Cola's affirmative defenses, Resp. at 2, it is essentially a brief in opposition to Defendant's Motion to Dismiss. The Court therefore construes the submission as a response.

aspartame contained in Diet Coke. Id. Williams subsequently developed anxiety that his consumption of aspartame would lead to cancer, and that anxiety has caused Williams to suffer from insomnia. Id. ¶ 9. As a result, Williams underwent a mental health evaluation. Id. ¶ 6. Williams now brings several claims against Coca Cola arising from the injuries he has allegedly suffered since consuming Diet Coke, including negligence, gross negligence, negligent infliction of emotional distress, negligent misrepresentation, and fraud. Id.

### III. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556.

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

## IV. DISCUSSION

Williams brings several claims arising from his consumption of Diet Coke: (1) Coca-Cola was negligent and grossly negligent in manufacturing, marketing, and distributing Diet Coke containing aspartame; (2) Coca-Cola negligently inflicted emotional distress on Williams through its distribution of Diet Coke; (3) Coca-Cola negligently and fraudulently misrepresented to the public that aspartame is safe. Compl. ¶¶ 8, 11, 18. In addition to monetary damages, Williams requests injunctive relief in the form of new labeling requirements for Coca-Cola products containing aspartame. Id., Wherefore Clause, ¶ (d).

### A. Preemption

Food, drugs, and cosmetics are regulated by the Food and Drug Administration ("FDA") under the Federal Food, Drug, and Cosmetic Act ("FDCA"). 21 U.S.C. §§ 301, *et seq.* Under that authority, the FDA regulates food additives such as aspartame. 21 U.S.C. § 348. After an extensive review process, the FDA approved the use of aspartame as a food additive. 21 C.F.R. § 172.804; see also Heller v. Coca-Cola Co., 646 N.Y.S.2d 524, ("On July 8, 1983, the FDA issued a final rule that permitted the additional use of Aspartame as a sweetener in carbonated beverages and carbonated beverage syrup bases. . . . Before approving this new use, the agency reviewed, among other things, the stability of Aspartame in carbonated beverages . . . ."). Therefore, Coca-Cola argues, all of Williams's state tort law claims should be dismissed because they are preempted by federal law. Mot. at 6.

"The Supremacy Clause of the United States Constitution 'invalidates state laws that interfere with, or are contrary to federal law.'" Bonilla v. Semple, No. 15-CV-1614, 2016 WL

3

4582038, at *5 (D. Conn. Sept. 1, 2016) (quoting U.S. Const. art. VI, cl. 2). The Second Circuit recently outlined the three different types of preemption:

> (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, "where congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law"; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives.

N.Y. SMSA Ltd. P'ship v. Town of Clarkstown, 612 F.3d 97, 104 (2d Cir. 2010) (quoting Wachovia Bank, N.A. v. Burke, 414 F.3d 305, 313 (2d Cir. 2005)). Coca-Cola argues that both field and conflict preemption apply to Williams's claims. Mot. at 10, 12.[2]

*1. Field Preemption*

A state law may be preempted when, "in the absence of explicit statutory language, . . . Congress intended the Federal Government to occupy [a field] exclusively." English v. Gen. Elec. Co., 496 U.S. 72, 79 (1990). "Such an intent may be inferred from a 'scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" Id. (alteration in original) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). Although Coca-Cola argues that the FDA's regulation of food additives is "so extensive as to thoroughly occupy the field," Mot. at 7, they do not cite to any

---

[2] Express preemption is not applicable. In 1976, an express preemption provision for medical devices was added to the FDCA. 21 U.S.C. § 360k(a); see also Riegel v. Medtronic, Inc., 552 U.S. 312, 322 (2008) (finding that § 360k(a) bars state law claims that impose requirements on medical devices "'different from, or in addition to, any requirement applicable . . . to the device' under federal law") (quoting 21 U.S.C. § 360k(a)). But the FDCA contains no preemption clause applicable to food additives. Riegel, 552 U.S. at 339 ("The FDCA contains no preemption clause, and thus the Court's interpretation of § 360k(a) has no bearing on tort suits involving drugs or additives.").

4

cases supporting that proposition, likely because it is incorrect, see Merrell Dow Pharms., Inc. v. Oxendine, 649 A.2d 825, 829 n.3 (D.C. Cir. 1994) (noting Congress's intent that the FDCA not preempt the field of food and drug laws (citing 108 Cong. Rec. 21,083 (1962))).

2. *Conflict Preemption*

"Even where Congress has not entirely displaced state regulation in a specific area, state law is preempted to the extent that it actually conflicts with federal law." Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 109, 204 (1983). There are two different types of conflict preemption. First, "[i]mpossibility preemption" arises when "compliance with both federal and state regulations is a physical impossibility." Id. (quoting Fla. Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142–43 (1963)). Second, "obstacle preemption" occurs when a "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Id. (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).

Impossibility preemption is a demanding defense. Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 725 F.3d 65, 99 (2d Cir. 2013). "The party urging preemption must do more than show that state law precludes its use of the *most* cost-effective and practical means of complying with federal law—it must show that federal and state laws 'directly conflict.' If there was *any* possible alternative for complying with both federal and state law—even if that alternative was not the most practical and cost-effective—there is no impossibility preemption." MTBE, 725 F.3d at 99 (citation omitted). Here, Coca-Cola does not even argue that a finding of liability under New York state law would make it impossible for Coca-Cola to comply with the

5

FDCA; after all, Coca-Cola is not required to use aspartame in its products. Therefore, impossibility preemption is not applicable in this case.

In obstacle preemption cases, "courts must first divine Congress's objectives in passing a particular federal statute by examining legislative history and the language of the statute itself . . . [and] must then analyze whether the state law at issue constitutes a 'sufficient obstacle' to warrant preemption." Bonilla, 2016 WL 4582038, at *5 (citing MTBE, 725 F.3d at 101–03). As with impossibility preemption, the burden of establishing obstacle preemption is heavy. MTBE, 725 F.3d at 101.

"In all pre-emption cases, and particularly in those in which Congress has 'legislated . . . in a field which the States have traditionally occupied,' we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) (alteration in original) (citation omitted) (quoting Rice, 331 U.S. at 230). This presumption against preemption is especially strong in the area of food safety, a field of traditional state power. Indeed, "[s]tates have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products.'" Fla. Lime & Avocado Growers, 373 U.S. at 144 (quoting Plumley v. Massachusetts, 155 U.S. 461, 472 (1894)); see also Kosta v. Del Monte Corp., No. 12-CV-1722, 2013 WL 2147431, at *6 (N.D. Cal. May 15, 2013) ("There is a strong presumption against federal preemption in the area of proper marketing and regulation of food, a realm traditionally in the power of the States.").

In light of the presumption against preemption, "the party asserting that federal law preempts state law bears the burden of establishing preemption." MTBE, 725 F.3d at 96. Here,

6

Coca-Cola hardly discusses obstacle preemption, and it does not provide sufficient information about the legislative history and purpose of the FDCA for the Court to find obstacle preemption. Bearing in mind that the burden is on Coca-Cola to show that state law claims are preempted in this case, Coca-Cola has failed to meet that burden. Therefore, the Court finds that Williams's claims are not subject to field preemption or conflict preemption. Because Coca-Cola does not otherwise move to dismiss Williams's negligence or gross negligence claims, those claims survive Coca-Cola's Motion.

### B. Fraud and Negligent Misrepresentation

Williams alleges that Coca-Cola negligently and fraudulently "misrepresented to the public that Diet Coke beverage[s] containing [aspartame] are safe and healthy." Compl. ¶ 11. Coca-Cola argues that those claims must be dismissed because they fail to plead any particular misrepresentation. Mot. at 17.

Under the Federal Rules of Civil Procedure, claims for fraud and negligent misrepresentation must be plead with particularity. Rule 9(b) carries the following enhanced pleading requirements for claims "alleging fraud or mistake":

> Claims that sound in fraud are subject to the heightened pleading standards of Fed. R. Civ. P. 9(b), which requires that averments of fraud be "state[d] with particularity." To satisfy this requirement, a complaint must "specify the time, place, speaker, and content of the alleged misrepresentations," "explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."

Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 359 (2d Cir. 2013) (alterations in original) (quoting Fed. R. Civ. P. 9(b); Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001)). Here,

7

because he has not identified any particular fraudulent or misleading statement, Williams has failed to meet that standard.

Even if, in consideration of Williams's status as a pro se litigant, the Court construes his fraud and negligent misrepresentation claims as false advertising or deceptive business practices claims under the New York General Business Law, the claims still fail. False advertising and deceptive business practices claims under New York Business Law sections 349 and 350 "are not subject to pleading-with particularity requirements." Ackerman v. Coca-Cola Co., No. 09-CV-395, 2010 WL 2925955, at *22 (E.D.N.Y. July 21, 2010) (collecting cases). But even under this lesser standard, a plaintiff must allege a specific misrepresentation. See Cline v. TouchTunes Music Corp., No. 14-CV-4744, 2016 WL 5478432, at *5 (S.D.N.Y. Sept. 29, 2016) (dismissing the plaintiff's false advertising claims with prejudice where the amended complaint contained "no allegations of any specific advertising by [the defendant] in New York or anywhere else"); Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 404 (S.D.N.Y. 2010) ("A blanket allegation that Hotels.com's 'advertising and statements' lead consumers to believe that it is the lowest-cost provider of hotel rooms is insufficient to plead a materially misleading 'deceptive act or practice.'"). Therefore, Williams's fraud and negligent misrepresentation claims are dismissed.

### C. Negligent Infliction of Emotional Distress

"A cause of action to recover for negligent infliction of emotional distress generally requires a plaintiff to show a breach of a duty owed to him which unreasonably endangered his physical safety, or caused him to fear for his own safety." Sacino v. Warwick Valley Cent. Sch. Dist., 137 A.D.3d 717, 719 (N.Y. App. Div. 2016). Additionally, the duty in negligent infliction of emotional distress causes of action must be "specific to the plaintiff, and not some amorphous,

free-floating duty to society." Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996). It must be a "specific, unique duty" owed to the plaintiff, not a "generalized duty to prevent unreasonable risks of harm." Id.

Here, Williams alleges that Coca-Cola breached its duty to him by selling Diet Coke, despite its knowledge that the aspartame in Diet Coke causes cancer and "extreme[] harm to the optic nerve." Compl. ¶ 6. The duty that Williams alleges in his Complaint is one owed to all Diet Coke consumers, not one owed to Williams in particular. Because Williams has not alleged that Coca-Cola breached a duty that was specific to him, his negligent infliction of emotional distress claim must be dismissed. See St. John v. Rein Teen Tours, Inc., No. 99-CV-2537, 2000 WL 977685, at *2 (S.D.N.Y. July 17, 2000) ("[T]he special duty that is required cannot be directed to a class of people but rather must be specific to the particular plaintiff.").

**D. Punitive Damages**

Coca-Cola also moves to dismiss Williams's request for punitive damages. "Punitive damages are not a separate cause of action and, thus, courts generally find motions to strike punitive damages at the motion to dismiss stage to be premature." Denis v. Home Depot, U.S.A., Inc., No. 10-CV-3227, 2014 WL 6632486, at *6 (E.D.N.Y. Nov. 21, 2014) (collecting cases). At this stage in the proceedings—before either side has had the opportunity to conduct discovery and present evidence—the Court declines to determine whether punitive damages are an appropriate remedy. Coca-Cola's Motion is therefore denied with respect to Williams's request for punitive damages.

**E. Labeling**

In the "wherefore" clause of Williams's Complaint, he seeks a court order demanding that Coca-Cola "identify and label all decomposition products of [aspartame], along with amounts, on all of its diet Coca-Cola soft drink labels." Compl., Wherefore Clause, ¶ (d). In its Motion, Coca-Cola argues that any relief Williams seeks that involves labeling is preempted by the Nutrition Labeling and Education Act ("NLEA"), which amended the FDCA and expressly preempted certain state law requirements in the field of food labeling. Mot. at 14–15.

At this stage, however, the Court need not reach the question whether Williams's demand is preempted by the NLEA. The labeling change that Williams seeks is a form of injunctive relief; it is not a separate cause of action. Therefore, the Court declines to address Williams's claim for injunctive relief until it determines whether his underlying causes of action have merit. See Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 117, 1127 (11th Cir. 2005) ("An injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.").

**F. Leave to Amend**

When a complaint is dismissed for the first time pursuant to Rule 12(b)(6), leave to amend before reviewing the proposed amended pleading should typically be withheld only if amendment would be futile—namely, if it is clear from the facts alleged that the events in question cannot give rise to liability. Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991); see also, e.g., In re Aluminum Warehousing Antitrust Litig., 833 F.3d 151, 163 (2d Cir. 2016) (discussing affirmance of dismissal without leave to amend due to futility); Orchard Hill

Master Fund Ltd. v. SBA Commc'ns Corp., 830 F.3d 152, 156 (2d. Cir. 2016) (noting that denial of leave to amend on futility grounds is subject to de novo review); Loreley, 797 F.3d at 191 (holding that, by not allowing plaintiffs to submit a new pleading attempting to correct any deficiencies, the district court "violated the liberal spirit of Rule 15" (quoting Williams v. Citigroup, Inc., 659 F.3d 208, 214 (2d Cir. 2011))). Otherwise, leave to amend should freely be given, especially when the plaintiff is appearing pro se. E.g., Grullon v. City of New Haven, 720 F.3d 133, 140 (2d Cir. 2013); Pangburn v. Culbertson, 200 F.3d 65, 70–71 (2d Cir. 1999).

Here, Williams's negligent infliction of emotional distress claim is dismissed without leave to amend because any amendment to that claim would be futile. Given Williams's status as a pro se litigant, however, the Court will permit him to seek amendment of his Complaint in all other respects. Any such motion to amend must be made within thirty (30) days from the date of this Decision and Order, must comply with the requirements for motions to amend in Local Rule 7.1(a)(4), and must address the deficiencies highlighted by the Court.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion to Dismiss (Dkt. No. 16) is **GRANTED in part** as to the claims for fraud, negligent misrepresentation, and negligent infliction of emotional distress, and **DENIED in part** as to the claims for negligence and gross negligence, and Plaintiff's request for punitive damages and injunctive relief; and it is further

**ORDERED**, that if Williams wishes to amend his Complaint, he must do so within **thirty (30) days** from the date of this Decision and Order; and it is further

**ORDERED**, that Plaintiff's Motion to Strike (Dkt. No. 20) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: March 31, 2017
Albany, New York

*[signature]*
Lawrence E. Kahn
U.S. District Judge