UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CEDRIC WILLIAMS,

                                  Plaintiff,

        v.                                                    8:15-CV-1534
                                                                                (CFH)
COCA COLA CO.,

                                  Defendant.
_____

**APPEARANCES:**                         **OF COUNSEL:**

Cedric Williams
10-B-3467
Cayuga Correctional Facility
P.O. Box 1186
Moravia, New York 13118
Plaintiff pro se

Goldberg, Segalla Law Firm            MICHAEL D. SHALHOUB, ESQ.
11 Martine Avenue, Ste. 750            JONATHAN M. BERNSTEIN, ESQ.
White Plains, New York 10606-1934
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION & ORDER

     Presently before the Court is plaintiff pro se Cedric Williams' motion to vacate the Court's June 21, 2018, judgment granting defendant The Coca Cola Company's ("Coca Cola" or "defendant") motion for summary judgment and dismissing plaintiff's complaint with prejudice. Dkt. Nos. 94, 95. Defendant filed a response in opposition to plaintiff's motion to vacate. Dkt. No. 97. For the reasons that follow, plaintiff's motion to vacate is denied.

**I. Background**

Plaintiff commenced this action on December 28, 2015. Dkt. No. 1 ("Compl."). As relevant here, defendant filed a motion for summary judgment on January 16, 2018. Dkt. No. 74. On January 31, 2018, plaintiff opposed the motion for summary judgment. Dkt. No. 77. On February 16, 2018, defendant filed a reply. Dkt. No. 85. On March 21, 2019, plaintiff filed a letter dated March 8, 2018, which requested the status of a determination on the motion for summary judgment. Dkt. No. 86. The letter also asked "if the expert report that was sent by a Dr. Ralph Walton on my behalf was attached to this case's docket. [T]his expert report was not provided by myself with my expert disclosure over one month ago (which was filed with my response to defendant's summary judgment motion) because of my current limitations." Id. On March 19, 2018, defendant filed a letter in response, indicating that defendant "ha[s] received no such 'report' by this purported 'expert' and that defendant "object[s] to its consideration at all in connection with the defendant's summary judgment motion[.]" Dkt. No. 87. On June 21, 2018, the Court granted defendant's motion for summary judgment. Dkt. Nos. 93, 94. On October 17, 2018, plaintiff filed a motion to vacate judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 60(b)(3). Dkt. No. 95. Defendant opposed the motion to vacate. Dkt. No. 97

**II. Arguments**

Plaintiff argues that the June 21, 2018, judgment must be vacated because defendant "successfully perpetrated fraud and deception on Plaintiff and the Federal

2

District Court itself in an effort to procure summary judgment relief." Dkt. No. 95-2 at 3. Plaintiff argues that defendant falsely informed the Court that it had not received a report from plaintiff's expert witness, Dr. Ralph Walton, but that Dr. Walton did send an expert report to defendant on March 1, 2018. Id. at 6, 9. Plaintiff contends that he did not learn about defendant's fraud until August 28, 2018, when he was able to contact Dr. Walton. Id. Plaintiff contends that Dr. Walton's "sworn affidavit" "establishes clear and convincing evidence that the Defendant deliberately engaged in fraud and misconduct." Id. at 6. Plaintiff further contends that, had the Court been able to consider Dr. Walton's report, the report "would have established a potentially meritorious opposition to Defendant's motion for summary judgment." Id. at 10. Plaintiff argues that defendant's alleged conduct of informing the Court that it had not received Dr. Walton's expert report amounts to "a carefully planned scheme calculated to deceive the District Court" which "warrants a vacatur of judgment." Id. at 13. Plaintiff also argues that "[t]here is no question that Coca Cola Co.'s attorneys successfully perpetrated fraud upon the District Court thereby preventing the judicial machinery from performing in the usual manner its impartial task of adjudging summary judgment motions presented for adjudication." Id.

In opposition, defendant contends that it never received a report from Dr. Walton. Dkt. No. 97 at 2. Defendant also points to this Court's Memorandum-Decision & Order ("MDO") noting that the Court has not been provided with a copy of the report. Id. (citing Dkt. No. 93 at 6). Further, defendant objects to the Court's consideration of Dr. Walton's report for reasons of (1) timeliness, (2) competence of the expert, (3) "lack

3

of an admissible scientific basis for its consideration and the failure at all for Walton to opine on general or specific causation for the injuries alleged." Id.  More specifically as to the timeliness argument, defendant contends that, even if the Court were to assume that it was served on defendant on March 1, 2018, the report would not be timely as it was submitted after the disclosure deadline.  Id. at 3.  As to the competence of the expert, defendant argues that Dr. Wilton is a psychiatrist and, thus, "is manifestly unqualified to offer the expert opinions required to prove plaintiff's claims."  Id.  Further, defendant contends that Dr. Walton's report relies on outdated sources that do not satisfy Fed. R. Civ. P. 26 or Daubert's requirements nor do they provide causation to a reasonable degree of medical or scientific certainty.  Id. at 3-4.  Further, defendant argues that Dr. Walton's report does not "offer scientifically reliable evidence to rebut the scientifically reliable and admissible conclusions of the highly qualified defense experts . . . ."  Id. at 4.

### III.  Discussion

### A. Legal Standard

Under Fed. R. Civ. P. 60(b)(3), which plaintiff cites as the basis for his motion, On a motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic, representation, or misconduct by an opposing party)."  FED. R. CIV. P. 60(b)(3).  "A motion to vacate a judgment under Fed .R. Civ. P. 60(b) is addressed to the sound discretion of the trial court."  Nat'l Petrochemical Co. of Iran v. M/T Stolt

Sheaf, 930 F.2d 240, 244 (2d Cir. 1991). "A Rule 60(b) motion is granted only upon a showing of exceptional circumstances, and cannot be used to relitigate the merits." Liu v. Kinokuniya Co., 161 F. App'x 119, *1 (2d Cir. 2005) (summary order) (Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986)). "A party seeking vacatur under Rule 60(b)(3) must establish the opposing party's fraud by clear and convincing evidence." Id. (citing Fleming v. New York Univ., 865 F.2d 478, 484 (2d Cir. 1989)). "In addition to demonstrating fraud or other misconduct by clear and convincing evidence, the movant must also show that 'this conduct prevented [the movant] from fully and fairly presenting his case.'" Walther v. Maricopa Int'l Inv. Corp., No. 97 CIV. 4816 (HB), 2002 WL 31521078, at *3 (S.D.N.Y. Nov. 12, 2002). Further,

> The strict requirements of Rule 60(b) are applicable to pro se litigants notwithstanding the liberality that must be afforded to them. Flaherty v. Hackeling, 221 F.R.D. 383, 386 (E.D.N.Y. 2004). Pro se plaintiffs are not excused from producing highly convincing evidence in support of their motion to vacate a final judgment. Fetik v. New York Law School, No. 97 Civ. 7746, 1999 U.S. Dist. LEXIS 9755, *10-11, 1999 WL 459805 (S.D.N.Y. June 29, 1999).

Keesh v. Smith, No. 904-CV-0779 (NAM/GJD), 2008 WL 2242618, at *2 (N.D.N.Y. May 29, 2008).

### B. **Analysis**

Plaintiff rests his argument on a conversation he had with Dr. Walton on August 28, 2018, wherein he alleges to have learned for the first time that Dr. Walton had, in fact, sent a copy of his report to defendant's attorneys and to the Court on March 1, 2018. Dkt. No. 95-2 at 6. However, expert disclosure was due ninety days before the

5

extended March 2, 2018 discovery deadline. Dkt. No. 41, Dkt. No. 93 at 4. Plaintiff was advised by the Court, during a June 2, 2017 conference, of his duty to file his expert disclosure ninety days before the close of discovery, and plaintiff expressed to the Court that he understood this obligation. Dkt. No. 93 at 4 (citing Dkt. No. 91 at 20-21). The Court thereafter extended discovery until March 2, 2018, making plaintiff's deadline to serve expert disclosure ninety days before March 2, 2018, or by December 2017. Id. (citing Dkt. No. 41). In a January 10, 2018, conference, the Court again advised plaintiff that his expert disclosure had been due in December 2017, and "that defendant would be making a motion for summary judgment on a number of grounds, one of which was plaintiff's failure to serve expert disclosure." Id. at 5 (citing Dkt. No. 84).

On January 31, 2018 – after the deadline for expert disclosure – plaintiff filed a "Notice of Service of Disclosure Information Fed. R. Civ. P. 26 (a) (1)" which identified Dr. Ralph Walton as an expert witness. Dkt. No. 78. Plaintiff's January 31, 2018, letter also indicated that " . . . A written report prepared and signed by him was submitted via email and his reference as Exhibit A for completion of disclosure." Id. As this Court noted in its June 21, 2018, MDO, "[a] copy of that untimely served expert report has not been provided to the Court." Dkt. No. 93 at 6. On March 12, 2018, plaintiff filed a letter inquiring whether Dr. Walton's expert report was attached to the Court's docket. Dkt. No. 86. Defendant responded to the letter, indicating that it never received any expert report and objected to its consideration. Dkt. No. 87. In a Text Order dated March 23, 2018, the Court advised that it would "only consider those documents which have been timely and properly filed." Dkt. No. 88. As the Court explained in its June 21, 2018,

6

MDO, at the date of the filing of the MDO, "the Court has not received an expert report from Dr. Walton or from any expert witness on behalf of plaintiff" and, thus, that "the Court has not been able to consider a report authored by Dr. Walton in deciding the pending motion for summary judgment." Dkt. No. 93 at 6.

The Court concludes that plaintiff has failed to demonstrate, by clear and convincing evidence, that defendant has committed fraud. The only evidence plaintiff offers to support his claim that defendant had received the expert report and, thus, deceived the Court is Dr. Walton's letter dated October 4, 2018. Dkt. No. 95-2 at 16. However, this letter does not suffice to meet plaintiff's burden of demonstrating fraud for several reasons. First, plaintiff does not submit an affidavit of service of the expert report, nor any evidence that plaintiff – or Dr. Walton – submitted the report to defendant or to the Court as alleged in his letter. Id. Second, Dr. Walton's letter is also entitled to less weight as, contrary to plaintiff's allegation (Dkt. No. 95-2 at 6), it is not sworn under penalty of perjury. Third, the letter indicates that Dr. Walton sent a copy of his report and a "62 page document which I had initially prepared when interviewed by Mike Wallace for a 60 Minutes story on my research on aspartame" on both defendant *and the Court*. Id. However, as the Court stated in its June 21, 2018, MDO, the Court never received anything from Dr. Walton, plaintiff, nor any other party. Dkt. No. 93 at 6. As of the signature date of this MDO, the Court still has not received any communication from Dr. Walton. Even if the Court assumes, *arguendo*, that Dr. Walton truthfully mailed out the report on March 1, 2018, to both the Court and defendant's attorneys, the Court is hard-pressed to conclude that defendant's attorneys deceived

7

the Court by saying they had not received the report when, in fact, the Court itself had also not received the report Dr. Walton purports to have sent to defendant and the Court on March 1, 2018.[1]  Finally, *even if* the Court were to assume, for sake of argument, that Dr. Walton sent defendant and the Court his expert report on March 1, 2018, it would have been untimely, as plaintiff was repeatedly informed of his duty to submit an expert disclosure ninety days before the March 2, 2018, close of discovery. For all of these reasons, the Court finds plaintiff has not met his "extremely high" burden of proving, by clear and convincing evidence, that defendant committed fraud upon the Court by stating that it had not received a copy of the Dr. Walton's report.[2]  Dr. Walton's October 4, 2018, letter does not amount to "highly convincing evidence" that defendant defrauded plaintiff and the Court by lying to the Court by stating it had not received Dr. Walton's report.

The Court is mindful of the fact that plaintiff, as an incarcerated pro se civil litigant may have greater difficulty in contacting Dr. Walton or other potential expert witnesses than a plaintiff who is not incarcerated.  However, the issue before the Court is not whether plaintiff was provided sufficient time to obtain an expert witness and submit a report, but whether plaintiff has demonstrated that defendant commit fraud by contending it had not received the expert report.  However, even if the Court were to address whether plaintiff had sufficient time to obtain an expert, the Court notes that, as

---

[1] The Court has, in fact, had never seen Dr. Walton's until plaintiff filed the report as an exhibit to his Motion to Vacate.  Dkt. No. 95-2 at 17.

[2] As the Court finds that plaintiff has failed to meet his burden of establishing fraud, the Court does not reach a discussion of whether Dr. Walton's expert report would pass muster under Daubert.

8

discussed in detail above, plaintiff's discovery deadline was extended, plaintiff was repeatedly advised of his duty to obtain an expert and submit an expert report that was due ninety days before the close of discovery, that defendant was planning to file a motion for summary judgment seeking dismissal, in part, on the ground that plaintiff did not timely disclose an expert or submit an expert report, and that plaintiff expressed that he understood this duty and that he would comply. Plaintiff did not request further extensions nor did he indicate that he was having difficulty obtaining Dr. Walton's report. Indeed, when plaintiff filed a letter dated March 12, 2018, asking whether the Court had received Dr. Walton's report, and the Court responded by text order dated March 23, 2018, that it had not received a copy of the Report, plaintiff did not, again, seek further assistance at that time. Dkt. Nos. 86, 88. Further, on March 19, 2018, defendant filed a letter in response, indicating that defendant "ha[s] received no such 'report' by this purported 'expert' and that defendant "object[s] to its consideration at all in connection with the defendant's summary judgment motion[.]" Dkt. No. 87. Although plaintiff was advised, at least as of the Court's March 23, 2018, Text Order, that the Court did not have the expert report and that it could consider only those documents filed in support or opposition that were timely, it was not until nearly seven months later, when plaintiff filed his Motion to Vacate the Court's Judgment, that plaintiff provided the Court with a copy of the expert report. Dkt. No. 95. Plaintiff's pro se or incarcerated statuses do not absolve plaintiff of his duty to timely comply with discovery obligations especially where, as here, plaintiff was given sufficient time and multiple reminders of this requirement. Accordingly, as plaintiff failed to meet his burden of demonstrating

9

fraud warranting a vacatur of this Court's judgment, pursuant to Fed. R. Civ. P. 60(b)(3), plaintiff's Motion to Vacate is denied.

### IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's Motion to Vacate Judgment (Dkt. No. 95) pursuant to Fed. R. Civ. P. 60(b)(3) is **DENIED**, and it is further

**ORDERED**, that the Clerk of the Court serve this Memorandum-Decision & Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: May 3, 2019
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge